## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TAWANA FRANKLIN,

                *Plaintiff*,

vs.

                Case No. 10-2234-EFM

MIQ LOGISTICS, LLC f/k/a YRC
LOGISTICS, INC.,

                *Defendant*.

## MEMORANDUM AND ORDER

Plaintiff brings this action, alleging violations of the Family Medical Leave Act (FMLA) and the Fair Labor Standards Act (FLSA) and emotional distress.  Presently before the court is defendant MIQ Logisitics' (MIQ's) motion for summary judgment (Doc. 54).  For the following reasons, the motion is granted.[1]

### I. Background

Plaintiff worked as a logistics coordinator for Defendant from 2003 to January 1, 2010.  As of January 1, 2009, Plaintiff was classified as a non-exempt, hourly employee.  In 2009, supervisor Dan Hutcheson told Plaintiff and others that because of cutbacks, employees' overtime was being closely monitored and employees "could not get overtime."  Plaintiff interpreted this statement to

---

[1]Defendant's motion does not seek summary judgment for 10 hours of overtime that Plaintiff claims she was entitled to for travel to Chicago.  *See* Doc. 55, p. 25, FN 3.

mean that employees would still have to work overtime, but could not record it.  Nonetheless, Plaintiff was compensated for overtime hours in 2009, but claims the amount paid did not cover all the time she worked.  Plaintiff claims she met with Human Resource Manager Anne Cordell in the spring of 2009 to complain about overtime issues.  She cannot recall when, prior to early 2009, she worked overtime for which she should have been paid but was not.  Plaintiff has not attempted to estimate, prior to early 2009, how much overtime she worked but for which she was not paid.  Rather, Plaintiff only generally claims that she worked approximately five hours overtime each week from January 1, 2009 to November 2009.

On December 7, 2009, supervisor Hutcheson emailed Plaintiff and stated that he needed her at work at 9:00 a.m. the following day because of team and customer requirements.  Despite that reminder, Plaintiff was 15-20 minutes late to a scheduled meeting.  Prior to the morning of Friday December 11, 2009, Hutcheson prepared a written list of Plaintiff's attendance issues.  On that same morning, Plaintiff called her supervisor, Hutcheson, and informed him that she would not be in to work because she needed to take her 18-year-old daughter to a drug and alcohol rehabilitation center.  Later on that day, Plaintiff called her supervisor again and told him she would work over the weekend to make up for the time she missed that day.  On Monday, December 14, 2009, Plaintiff did not report to work, and instead picked up her daughter from the facility and returned home with her.  At all times during this ordeal, Plaintiff's daughter was able to take care of her own life needs, and the treatment facility stated that it was optional to have someone stay and care for her.  When Plaintiff returned to work on December 15, 2009, Human Resource Manager Cordell asked Plaintiff to let her know if Plaintiff wanted to talk about the Family Medical Leave Act (FMLA).  Plaintiff

rejected this offer and never spoke with Cordell about it.  Plaintiff was paid for her December 11 and 14, 2009 absences, despite being out of vacation time.

The attendance reminder that supervisor Hutcheson began preparing for Plaintiff prior to December 11, 2009, was ultimately dated and given to Plaintiff on December 15, 2009.   Plaintiff admits that the attendance reminder was not in retaliation for her alleged overtime complaints, but claims it was for taking off work to care for her daughter.

Cordell began monitoring Plaintiff's email and internet usage in late 2009.  Defendant claims the monitoring began because Hutcheson expressed concerns regarding Plaintiff's work performance and level of output relative to the amount of time spent on her computer.  Plaintiff counters that the monitoring was in retaliation for her refusal to sign the attendance reminder prepared by Hutcheson. Defendant has monitored computer usage of other employees for various reasons, pursuant to its policy providing that it may monitor employee's computer usage, including emails, without prior notice.

After monitoring Plaintiff's emails, Defendants discovered several personal or seemingly inappropriate emails, many involving Pascal Grunder, branch manager for one of Defendant's customers.  For example, Plaintiff emailed Grunder in December 2009, indicating that she would discount his company $200 previously denied by one of Plaintiff's team members.  In that email, Plaintiff said she could discount Grunder because she was his "buddy" and she has her "little tricks" but that she would not be able to do this "if it's a constant thing."   Plaintiff claims that she had approval to discount the $200 and had to have Hutcheson's signature on the credit memo. Additionally, there were emails in which Grunder and Plaintiff discussed their physical and sexual attraction to each other.

On December 31, 2009, Hutcheson terminated Plaintiff's employment for violating company policies.  Hutcheson also presented Plaintiff with a highlighted copy of the Code of Corporate Conduct and Information Security Policies & Procedures, which prohibited personal use of Defendant's information system as well as situations in which an employee's personal involvement may appear to be in conflict with their responsibility to act in the best interests of the company.  The policy further provides that failure to comply may end in disciplinary action up to and including termination.  Plaintiff admits that she knew of these policies, but claims that no one follows them. Plaintiff further admits that she never disclosed her relationship with Grunder to Defendant. Additionally, Plaintiff admits that no one ever told her she was terminated for complaining about overtime, nor is she aware of any documentation indicating her termination was for complaining about overtime.

## II.  Standards

Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[2]  "An issue of fact is 'genuine' if the evidence allows a reasonable jury to resolve the issue either way."[3]  A fact is "material" when "it is essential to the proper disposition of the claim."[4]  The court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party.[5]

---

[2]Fed. R. Civ. P. 56(a).

[3]*Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4]*Id.*

[5]*LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.[6]  In attempting to meet this standard, the moving party need not disprove the nonmoving party's claim; rather, the movant must simply point out the lack of evidence on an essential element of the nonmoving party's claim.[7]

If the moving party carries its initial burden, the party opposing summary judgment cannot rest on the pleadings but must bring forth "specific facts showing a genuine issue for trial."[8]  The opposing party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[9]  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[10] Conclusory allegations alone cannot defeat a properly supported motion for summary judgment.[11]  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."[12]

Finally, summary judgment is not a "disfavored procedural shortcut," but it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]

---

[6]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[7]*Id.* (citing *Celotex*, 477 U.S. at 325.)

[8]*Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[9]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[10]*Adler*, 144 F.3d at 671.

[11]*White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

[12]*Bones v. Honeywell Intern, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[13]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.  Analysis

### 1.  FMLA Interference

Plaintiff claims Defendant interfered with her right to take FMLA by disciplining her for absences she alleges were FMLA-qualifying.  Defendant claims that summary judgment is proper because Plaintiff was not entitled to FMLA leave, the alleged adverse action was not adverse, and the alleged adverse action did not interfere with her right to take leave.

To establish a prima facie case of interference, a Plaintiff must prove that: (1) she was entitled to FMLA leave; (2) an employer's adverse action interfered with her right to take FMLA leave; and (3) the employer's adverse action was related to the exercise or attempted exercise of her FMLA rights.[14]

*A.  Entitlement to FMLA Leave*

"Under the FMLA, an employer may not 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA].'"[15]  The FMLA permits an employee to take leave from work to care for a parent, spouse, or child suffering from a serious health condition.[16]   The FMLA authorizes leave to care for a child 18 years of age or older *only if* the child is suffering from a serious health condition *and* is "incapable of self-care because of a mental or physical disability."[17]  A serious health condition denotes "an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice or residential medical care

---

[14] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006).

[15] *Id*. (quoting 29 U.S.C. § 2615(a)(1)).

[16] 29 U.S.C. § 2612(a)(1)(c).

[17] 29 U.S.C. § 2611(12).

facility."[18]  In this case, Plaintiff's daughter was admitted to Research Psychiatric Center for several days.  As such, Plaintiff's adult daughter was suffering from a serious health condition.

Because Plaintiff's daughter is over 18 years old, however, she must also be incapable of self-care because of a disability for Plaintiff to qualify for FMLA leave.  According to FMLA regulations set forth by the Secretary of Labor, "physical or mental disability" as used in 29 U.S.C. § 2611(12)(B), means a "physical or mental impairment that substantially limits one or more of the major life activities of an individual" as these terms are defined by the regulations for the Americans with Disabilities Act (ADA)."[19]  In other words, an employee may take FMLA leave to care for an adult child only if that child is "disabled" for purposes of the ADA.[20]  Further, an individual is incapable of self-care if she "requires active assistance or supervision to provide daily self-care in three or more of the 'activities of daily living' (ADLs) or 'instrumental activities of daily living' (IADLs)."[21]  The same regulation defines ADLs to encompass "adaptive activities such as caring appropriately for one's grooming and hygiene, bathing, dressing and eating."[22]  IADLs "include cooking, cleaning, shopping, taking public transportation, paying bills, maintaining a residence, using telephones and directories, using a post office, etc."[23]  In this case, Plaintiff has neither alleged nor has advanced any facts that her daughter had a mental or physical disability, or that she was incapable of self-care.  Rather, the evidence is undisputed that Plaintiff's daughter was only at the

---

[18] 28 U.S.C. § 2611(11)(A).

[19] 29 C.C.R. § 825.113(c)(2).

[20] *See Novak v. MetroHealth Med. Ctr.*, 503 F.3d 572, 581 (6th Cir. 2007).

[21] 29 C.F.R. § 825.113(c)(1).

[22] *Id.*

[23] *Id.*

facility for a short period and was able to eat, shower, groom herself, walk and use the restroom without assistance or supervision and perform other typical activities of daily living by herself.  As such, Plaintiff has not met her burden of proving she was entitled to FMLA leave, and summary judgment is proper.

       *B.  Adverse Action*

Even if Plaintiff could establish she was entitled to FMLA leave, summary judgment would still be proper because Plaintiff cannot show that some adverse action interfered with her attempted exercise of FMLA rights.

The United States Supreme Court has held that conduct is adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[24]  The Tenth Circuit liberally defines the phrase "adverse employment action" and considers whether certain actions meet the definition on a case-by-case basis.[25]  Such actions are not simply limited to monetary losses.[26]  Nonetheless, "a mere inconvenience or an alteration of job responsibilities" will not constitute adverse employment action.[27]  Further, although disciplinary proceedings, such as a warning letters and reprimands, can constitute adverse employment action,

---

[24] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 2268 (1998).

[25] *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir. 1998); *Jeffries v.* Kansas, 147 F.3d 1220, 1232 (10th Cir. 1998); *Trujillo v. New Mexico Dept. of Corrections*, 182 F.3d 933 (10th Cir. 1999) (unpublished).

[26] *See Jeffries*, 147 F.3d at 1232.

[27] *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 532 (10th Cir. 1998).

a reprimand will only rise to that level if it "adversely affects the terms and conditions of the plaintiff's employment."[28]

In this case, Plaintiff alleges that she should not have been "written up" for any of the absences described in the attendance reminder, particularly the December 11 and December 14, 2009, absences, which this court has already found did not qualify for FMLA leave. Thus, the only "adverse action" claimed to be suffered by Plaintiff regarding her FMLA interference claim is the attendance reminder. The attendance reminder did not change Plaintiff's employment status, reduce her duties or pay, or lower her performance evaluation. As such, Plaintiff did not suffer an adverse action. Even if the attendance reminder was adverse, it did not interfere with Plaintiff taking FMLA leave because Plaintiff was paid for the days off that she took her adult daughter for treatment, despite being out of vacation days.

Because Defendant's actions were neither adverse nor in interference, summary judgment is proper.

C. *Relation*

Even if Plaintiff could establish the first two elements of her prima facie case, summary judgment would still be proper because she cannot prove that the employer's adverse action was related to the exercise or attempted exercise of her FMLA rights.

The uncontested facts are that the attendance reminder, which Plaintiff ultimately received on December 15, 2009, was first prepared prior to Plaintiff's unscheduled absences on December 11 and 14, 2009. Indeed, Supervisor Hutcheson began preparing the attendance reminder after

---

[28] *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1137 (10th Cir. 2005) (examining "adverse action" in a Title VII suit and ultimately holding that a warning letter was not adverse employment action) (citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998)).

Plaintiff was 15-20 minutes late for a scheduled telephone conference with a client.   Further, Hutcheson had already talked with Plaintiff about his frustration with her sporadic and unpredictable attendance.   Thus, Plaintiff would have been presented with the attendance reminder, regardless of her absences on December 11 and 14, 2009.[29]   Based on these uncontroverted facts, Plaintiff has not raised a genuine issue of material fact that her attempted exercise of FMLA rights was related to the attendance reminder.   As such, summary judgment is proper.

## 2.  FMLA Retaliation

Plaintiff also claims that Defendant retaliated against her when she received an attendance reminder on December 15, 2009, when Defendant monitored her computer usage, and when she was ultimately terminated from her employment.   Defendant counters that its actions were taken in response to Plaintiff's violation of company policies and performance expectations, particularly because of attendance issues, low work output, and the discovery of an improper relationship and communications with a client that she failed to disclose to management.

FMLA retaliation claims are subject to the burden shifting analysis of *McDonnell Douglas Corp. v. Green.*[30]   To establish a prima facie case, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) the employer took an action that a reasonable employee would find materially adverse; and (3) a causal connection between the two exists.[31]   If Plaintiff can establish a prima facie case, the burden shifts to Defendant to provide a legitimate, nonretaliatory reason for

---

[29] *See Gearhart v. Sears, Roebuck & Co., Inc.*, 27 F. Supp. 2d 1263, 1275 (D. Kan. 1998) (an "employee who requests FMLA leave or is on leave would hvae no greater rights than an employee who remains at work.")

[30] *Metzler*, 464 F.3d at 1170.

[31] *Id.* at 1171.

its actions.[32]  The burden then shifts back to Plaintiff to present sufficient evidence demonstrating there is a genuine dispute of material fact as to whether Defendant's reasoning is pretextual.[33]  "A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[34]   A plaintiff typically makes a showing of pretext with: (1) evidence that defendant's stated reason is false; (2) evidence that defendant acted contrary to a written policy; and (3) evidence that defendant acted contrary to an unwritten policy or practice.

Here, Plaintiff cannot establish a prima facie case because, as detailed above, Plaintiff did not engage in protected activity.   As such, summary judgment is proper on the retaliation claim as well.

Even if Plaintiff could establish a prima facie case, Defendants have articulated a legitimate, nonretaliatory reason for its actions.   First, Defendant issued the attendance reminder due to Plaintiff's poor attendance record.   Second, Defendant monitored Plaintiff's email traffic and internet usage because her work output was low relative to the amount of time spent on her computer.   Finally, Defendant states it terminated Plaintiff's employment for violating company policies after it discovered Plaintiff's improper relationship and communications with a client that she failed to disclose.   Thus, Defendants are able to demonstrate legitimate, nonretaliatory reason for its actions.

---

[32]  *Id*. at 1172.

[33]  *Id.*

[34]  *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir. 2006) (citation and quotation omitted).

The burden shifts back to Plaintiff to establish pretext.  Plaintiff cannot meet this burden, however, because Defendants actions were in exact accordance with their written policies.  Plaintiff offers no evidence to support her argument that she was aware of the policy but that no one ever followed it, and thus is not sufficient to establish pretext.  As such, summary judgment is proper.

## 3.  FLSA Claim

Plaintiff also brings a claim for unpaid overtime under the FLSA.[35]  Under the FLSA, an employer must pay an employee overtime compensation if she works more than forty hours per week.[36]  The employee "has the burden of proving that he performed work for which he was not properly compensated."[37]  Indeed, an employee must "produce sufficient evidence to show the extent and amount of such work as a matter of just and reasonable inference."[38]

In this case, Plaintiff cannot meet this burden.  Plaintiff was never told she could not record overtime even if she worked hours in excess of 40 hours.  Plaintiff's claims that this directive could be inferred is not sufficient to meet this burden.  Further, Plaintiff cannot recall specific dates she worked overtime and was not compensated.[39]  The court will not consider Plaintiff's claim that a document on her work computer could establish the time because it was never requested in discovery and her testimony about that document is hearsay.  Finally, Plaintiff sought approval and

---

[35] 29 U.S.C. § 201 *et seq.*

[36] *See* 29 U.S.C. § 207(a)(1).

[37] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).

[38] *Wirtz v. Lieb*, 366 F.2d 412, 414 (10th Cir. 1966).

[39] In Defendant's Motion for Summary Judgment, it noted it was not moving for summary judgment on 10 hours of overtime that Plaintiff claims she is entitled to for travel to Chicago.  (Doc. 55, p. 35, FN 3).  Accordingly, the claim for 10 hours will survive summary judgment.  Aside from that trip, however, Plaintiff has not come forward with specifics regarding her alleged overtime.

was compensated for overtime on at least one occasion in 2009, thus indicating she was aware that Defendant required approval for overtime.  Because Plaintiff cannot meet her burden to provide sufficient evidence to show the amount she allegedly worked overtime, summary judgment is proper.

## 4.  FLSA Retaliation

Like Plaintiff's FMLA retaliation claim, Plaintiff's FLSA retaliation claims is analyzed under the burden-shifting analysis set forth in *McDonell Douglas Corp. v. Green*.[40]  To establish a prima facie case of retaliation, plaintiff must prove (1) she engaged in activity protected by the FLSA; (2) she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection exists between employee's activity and the employer's adverse action.[41]  If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its decision.[42]  The burden then shifts back to the plaintiff to demonstrate that the defendant's reason is pretextual.[43]

In this case, Plaintiff cannot meet her burden.   Plaintiff concedes that the computer monitoring and attendance reminders were not retaliatory for her alleged overtime complaints. Further, the uncontroverted facts are that no one told Plaintiff she was terminated for requesting or complaining about overtime, Plaintiff is not aware of any documentation that would substantiate her belief that her request for overtime are related to her termination, and Plaintiff admits she had not

---

[40]  *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004).

[41] *See Allen v. Garden City Co-op, Inc.*, 651 F. Supp. 2d 1249, 1258 (D. Kan. 2009).

[42] *Id.*

[43] *Id.*

complained about overtime since the summer of 2009 and was not terminated until December 31,

2009.  Simply put, Plaintiff cannot establish that a causal connection exists between the alleged

protected activity and her termination, and thus summary judgment is proper.

Even if Plaintiff could establish a prima facie case, summary judgment would still be proper

because, as discussed above, Defendants can articulate a legitimate non-retaliatory reason for

terminating Plaintiff's employment, and Plaintiff has not even attempted to establish that those

reasons are pretextual.  For those reasons, summary judgment is granted.

## 5. Emotional Distress

Plaintiff also seeks damages for emotional distress.  Defendant argues that the FLSA does

not provide for emotional distress damages, and this court agrees.

Other courts in this District have discussed the issue of damages under the FLSA, noting

with favor that other Circuits have "held that the FLSA's enforcement provision . . . do not permit

a plaintiff to recover mental distress or punitive damages . . . ."[44]  In *Goico v. Boeing*, a Kansas

Federal District Court examined whether punitive damages were allowable for claims of

discrimination and retaliation under the Age Discrimination in Employment Act (ADEA).[45]  The

Court noted that the "enforcement provisions of the ADEA, which were patterned after the [FLSA],

state in part that the ADEA shall be enforced in accordance with the provisions of the FLSA . . . ."[46]

The court continued and noted that "any violation of the ADEA shall be deemed a violation of the

FLSA . . . " *Id.* Thus, although *Goico* is an ADEA case, it specifically discusses damages allowable

---

[44] *Goico v. Boeing Co.*, 347 F. Supp. 2d 986, 995 (citing *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1446 (11th Cir. 1985)).

[45] *Id.*

[46] *Id.* at 994.

under the FLSA because of the ADEA's reliance on that Act's enforcement provisions.  The *Goico* court found that emotional distress damages were not allowable.  Indeed, even the Tenth Circuit has stated that it is "established law in this and most other circuits that, in general, separate damages for emotional distress are not available under the 'legal or equitable relief' clause of the ADEA."[47]

In support of its position that emotional distress damages are appropriate, Plaintiff relies on the Seventh Circuit case of *Travis v. Gary Community Mental Health Center*.[48]  The Court in *Goico* discussed *Travis*, however, and found it unpersuasive, finding that there is no support for "the view that Congress intended to single out retaliation claims under the FLSA (or ADEA) for potentially far greater recovery than it allowed with respect to virtually all other types of employment discrimination claims."[49]  The court went on to note that "the *Travis* exception for retaliation claims is not well-founded, and is not a persuasive basis for abandoning the long-standing rule that damages for mental distress and punitive damages are not available on claims under the ADEA."[50]Although not binding, this court finds the *Goico* opinion persuasive and concurs with its assessment that emotional damages are not available under the FLSA.  Accordingly, summary judgment is proper on this claim as well.

---

[47] *Villescas v. Abraham*, 311 F.3d 1253, 1259 (10th Cir. 2002).

[48] 921 F.2d 108 (7th Cir. 1990).

[49] *Goico*, 347 F. Supp. 2d at 997.

[50] *Id.*  This court finds it quite curious that Plaintiffs would rely on *Travis* despite this explicit rejection by another judge in the District of Kansas, without so much as mentioning the District of Kansas case and trying to distinguish it.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgement (Doc. 54) is hereby GRANTED.  Accordingly, the only issue remaining in this case relates to the 10 hours of overtime that Plaintiff claims she is entitled to for travel to Chicago, which claim was expressly excluded from Defendant's motion.

**IT IS SO ORDERED**.

Dated this 28th day of July, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE